745 P.2d 972

**Mary E. QUINN, individually and as next best friend of Courtney Quinn, her son, Plaintiffs–Appellants,**

v.

**Orlynne Eleanor TURNER and John Turner, wife and husband, Defendants–Appellees.**

**No. 1 CA–CIV 9167.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 27, 1987.

Review Denied Dec. 15, 1987.

---

Toles & Associates, P.C. by Jeremy Toles, Rosann Johnson, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Steven J. Renshaw, Scott E. Boehm, Phoenix, for defendants-appellees.

## OPINION

### KLEINSCHMIDT, Judge.

In this case, we reject the defendants' contention that a cause of action for negligent infliction of emotional distress exists only where the plaintiff witnesses an injury to another person. We hold that a cause of action for negligent infliction of emotional distress also exists in a case where the plaintiff's shock or mental anguish developed solely from a threat to the plaintiff's personal security without witnessing an injury to another person. Physical impact to the plaintiff is not necessary, but the emotional distress must manifest itself in some

physical way. We believe that this has been the rule in Arizona at least since the decision in *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979).

## FACTS

Three-year-old Courtney Quinn was standing with his mother by the side of their automobile when the defendants' car struck the Quinn automobile broadside. The point of impact was only a foot or two from where the mother and child were standing. The crash made a loud noise, and the Quinn's car was knocked some distance and came to rest against a tree. There was no physical impact to either mother or son.

Immediately after the accident the boy would not move from the scene, and his mother described him as frozen in position. Within a week he displayed behavioral changes. He became afraid to go to the bathroom alone, feared going to school, and feared leaving his mother. He began to act out physically against his sister, ground his teeth at night, and began wetting himself before he could get to the bathroom. The boy was treated by a psychologist for his anxiety and by a dentist for his teeth grinding disorder. A decision as to dental treatment was deferred until the child grows older.

The plaintiff, Mary E. Quinn, filed this action as next best friend for her son against the driver and owners of the automobile that struck the Quinn vehicle. She claimed damages on behalf of the boy for his personal injuries which resulted from fright and shock. The trial judge granted the defendants' motion for summary judgment, holding in effect that no cause of action exists for the emotional injury done to the boy. There are a number of reasons why we believe that the appellant stated a cause of action.

## THE ARIZONA CASES

The Arizona cases on point, particularly *Keck v. Jackson*, favor the recognition of the tort as we define it. In *Keck*, the plaintiff sought damages for emotional in-

juries she suffered as the result of seeing her mother injured in an automobile accident. The supreme court held that a claim was stated when the following criteria were met:

1) The shock or mental anguish must be manifested by physical injury.

2) The plaintiff must be within the zone of danger, i.e.—the defendant's negligence must have created an unreasonable risk of bodily harm to him.

3) The emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship.

The focus of the supreme court's interest in *Keck* was on the issue of whether a cause of action could exist in the absence of some physical impact to the plaintiff. For years courts had imposed the impact requirement as a guarantee that the emotional damage was genuine. In *Keck,* the court concluded that no impact to the person of the plaintiff was required and that a physical manifestation of the emotional condition was a sufficient guarantee against fraudulent or frivolous claims.

The defendants argue, however, that under *Keck* a cause of action for negligent infliction of emotional distress can only exist where the plaintiff witnesses a person with whom the plaintiff has a close relationship suffer a personal injury. We do not read *Keck* to limit the law as the defendants contend. Rather, we believe that this factor is referred to in *Keck* only because the facts of that case present the issue. The facts in this case, however, present no such issue. The inclusion in *Keck* of the element of injury to a person with whom the plaintiff has a close relationship was intended not as a general limitation on the tort but as a condition which applies only when the cause of action arises out of witnessing an injury to another person.

The defendants point out that *Keck* was first decided in the court of appeals,[1] and they argue that the supreme court vacated that opinion because the court of appeals

relied on the "overly broad rationale of the California cases." It is true that one California case the Arizona Court of Appeals relied on, *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), which involved emotional injury to a mother resulting from witnessing an injury to her child, eliminated the element that the plaintiff must be in the zone of danger. It is not entirely clear whether the court of appeals in *Keck* intended to follow *Dillon* and eliminate that element. But whether it did or not has no bearing on whether a plaintiff can recover if he did not witness a person with whom he has a close relationship suffer a physical injury. We find nothing in a reading of either *Keck* decision to suggest that the supreme court has not approved the principle we recognize here.

Another Arizona case suggests that our conclusion is correct. In *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974), the plaintiffs sought damages against a bank for mental anguish suffered as the result of a wrongful garnishment. The plaintiffs had no other damages as a result of the bank's action. The court, in dicta, observed:

> With but a few minor exceptions, the rule is that where no malice or intent is shown, no damages may be awarded for mental anguish or distress of mind. The exception to the rule occurs when it is shown that there is a physical invasion of a person or the person's security. *Logan v. St. Luke's General Hospital,* 65 Wash.2d 914, 400 P.2d 296 (1965). No such physical invasion occurred here.

110 Ariz. at 265, 517 P.2d at 1261.

The defendants rely, however, on *Roman v. Carroll,* 127 Ariz. 398, 621 P.2d 307 (Ct.App.1980), to bolster their interpretation of *Keck.* In *Roman,* Division Two of this court held that a plaintiff who had suffered emotional anguish as the result of seeing her dog killed by another dog could not recover for her mental distress. Although it is true that the plaintiff had considered herself in danger of attack by the other dog, the whole focus of the case was on the distress the woman had experi-

---

1. *Keck v. Jackson,* 122 Ariz. 117, 593 P.2d 671    (Ct.App.1978).

enced at what happened to her own dog. The court simply held that a dog, as personal property, cannot be equated with a person with whom the plaintiff has a close personal relationship. Thus, *Roman* does not support the defendants' position.

## THE LAW IN OTHER JURISDICTIONS

The rule as we interpret it is accepted by most courts which have considered the matter. As we have observed, when the tort of negligent infliction of emotional distress first developed, the courts refused to allow recovery unless the plaintiff suffered some physical impact to his person. Most of the cases that discuss the problem do so in the context of injury to the plaintiff alone, as opposed to injury arising out of witnessing harm to another. The great majority of courts have abandoned the need to establish a physical impact, leaving intact the rule that a plaintiff who is in the zone of danger and suffers physical manifestation of his fright may recover. *See Prosser and Keeton on Torts*, § 54 at p. 364 (5th ed. 1984) and cases cited therein.

## THE RESTATEMENT

The *Restatement (Second) of Torts* (1965) recognizes the plaintiff's right to recover. Section 313, under the topic heading "Conduct Negligent Because Intended or Likely to Cause Physically Dangerous Emotional Distress," provides:

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence

of the actor has otherwise created an unreasonable risk of bodily harm to the other.

The comment to the section notes:

d. The rule stated in Subsection (1) applies only where the negligent conduct of the actor threatens the other with emotional distress likely to result in bodily harm because of the other's fright, shock, or other emotional disturbance, arising out of fear for his own safety, or the invasion of his own interests. It has no application where the emotional distress arises solely because of harm or peril to a third person, and the negligence of the actor has not threatened the plaintiff with bodily harm in any other way.

Thus, where the actor negligently runs down and kills a child in the street, and its mother, in the immediate vicinity, witnesses the event and suffers severe emotional distress resulting in a heart attack or other bodily harm to her, she cannot recover for such bodily harm unless she was herself in the path of the vehicle, or was in some other manner threatened with bodily harm to herself otherwise than through the emotional distress at the peril to her child.

As to the rule to be applied where the other is so threatened with bodily harm in another manner, and instead suffers emotional distress at the peril or harm of a third person, which results in bodily harm to the other, see § 436.

In *Keck*, the supreme court indicated an "inclination to adopt" these rules. 122 Ariz. at 115, 593 P.2d at 669.

Section 436, which is found under the topic heading "Rules Which Determine the Responsibility of a Negligent Actor For Harm Which His Conduct is a Substantial Factor in Producing" provides:

1. If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance where the actor should recognize as involving the unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emo-

tional disturbance does not protect the actor from liability.

2. If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

When there is no case in point we will follow the Restatement. *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 238, 537 P.2d 618, 623 (1975).

## SUFFICIENCY OF EVIDENCE

The defendants contend that the plaintiff did not establish a prima facie case because no expert evidence linking the accident to the boy's physical symptoms was presented in the trial court. This issue was not presented to the trial judge, so the ruling could not have been based on that point. On remand, the parties are free to develop the issue. The defendants do not contend that if there is a causal link between the accident and the physical manifestations of the boy's emotional upset, such manifestations were not sufficient to support the cause of action.

The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

EUBANK and JACOBSON, JJ., concur.